**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **v.** | § | **SA-18-CR-436-XR** |
| | § | |
| **GLENN RAY MCGARITY** | § | |
| | § | |

## ORDER

On this day came on to be considered Defendant's motion to suppress. The Defendant is charged with felon in possession of a firearm and passing or possessing counterfeit currency. A hearing was held on February 12, 2019.

## Background

Prior to May 25, 2018, the Defendant was being sought by the Lone Star Fugitive Task Force for various arrest warrants. In addition, he was suspected of being involved in a homicide.

San Antonio Police Officer Joe Rios was investigating where the Defendant could be located, when he found that a girlfriend of the Defendant lived on Ravina Street. Officer Rios took up surveillance at the Ravina Street residence and noted that a Jeep Cherokee, known to be associated with the Defendant, was at the residence. Officer Rios called for backup assistance, but before other officers arrived the Defendant and a female got into the vehicle and drove away. Officer Rios followed the vehicle and notified other officers of this change. The Defendant drove to another residence located on Pebble Breeze, exited the vehicle and entered that residence. Officer Rios notified other officers and waited for backup. Once other officers arrived to the scene, the Defendant exited the residence and headed to his vehicle. He was then intercepted and arrested.

Officer Rios and others peeked into the windows of the Jeep Cherokee and saw a large amount of money in the front seat console, a long rifle on the passenger side floorboard, and what appeared to be narcotics in the back-seat area, behind the driver seat.

At some point the doors to the Jeep Cherokee were opened, whether that was done prior to the evidence technician arriving is unclear. The evidence technician took various photographs of the vehicle's exterior and interior.

The vehicle was later impounded and towed to the pound. The Defendant was taken to a police station, where he was interviewed by Det. Mark Morales. The Defendant was given his Miranda warnings and admitted that he had been sleeping inside the vehicle for a couple of days and was the driver of the vehicle. At some point in time following the arrest, Det. Morales prepared an affidavit for search warrant seeking a search of the vehicle. The affidavit read, in part, as follows:

Your affiant has been investigating a murder case … that occurred on the 14th day of May 2018…. It was discovered that the suspect had three outstanding warrants, two of which were felonies…. Earlier this afternoon, the task force saw the suspect attempting to get into the listed vehicle…. The members of the task force took the suspect into custody without incident. Members of the task force then saw in plain view of the vehicle a military style assault rifle, a semiautomatic handgun, a large amount of Marijuana, and counterfeit money.[1]

Defendant now has filed a motion to suppress arguing that the opening of the car doors and impounding the vehicle, before a search warrant was obtained violated the Fourth Amendment.

### Analysis

 "Opening a vehicle's door or piercing the interior airspace constitutes a search. Reasonable suspicion must exist prior to a search." *United States v. Meredith*, 480 F.3d 366, 369

---

[1] Govt. Ex. 1 to February 12, 2019 hearing.

(5th Cir. 2007).  However, "the act of looking through a car window is not a search for Fourth Amendment purposes because 'a person who parks a car—which necessarily has transparent windows—on private property does not have a reasonable expectation of privacy in the visible interior of his car.'"  *United States v. Bynum*, 508 F.3d 1134, 1137 (8th Cir. 2007).  The long rifle, cash and drugs were in plain view.  See Govt. Exhibit 2.

In this case the officers had either probable cause or reasonable suspicion to open the car doors to substantiate their belief that weapons, drugs and money were in the vehicle.  Further, they were authorized to take photographs to inventory the scene, and avoid any later claims that items were stolen by the police or items were "planted" by the police.  *See S. Dakota v. Opperman*, 428 U.S. 364, 369, 96 S. Ct. 3092, 3097, 49 L. Ed. 2d 1000 (1976).  *See also United States v. Martin*, 806 F.2d 204, 207 (8th Cir. 1986) (applying automobile exception to the warrant requirement).

Further, "[t]he authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge."  *S. Dakota v. Opperman*, 428 U.S. at 369.  This case, however, presents the issue of whether the police could impound a vehicle parked in a private driveway.  The Court concludes that the officers could have impounded the vehicle since leaving the vehicle unattended could have led to the potential loss of evidence related to the murder investigation, and if the vehicle was broken into, the potential release of weapons and drugs into the community was a possibility.  *See United States v. Privett*, 68 F.3d 101, 104 (5th Cir. 1995) ("Under Texas law, an automobile may be impounded if the driver has been removed from it and placed under arrest and there is no other reasonable alternative available to ensure the protection of the vehicle.").

**Conclusion**

Defendant's motion to suppress (Dkt. No. 31) is DENIED.

It is SO ORDERED.

SIGNED this 12th day of February, 2019.

_____
XAVIER RODRIGUEZ

UNITED STATES DISTRICT JUDGE